UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSMOS GRANITE (WEST), LLC, a
Washington limited liability company,

        Plaintiff,

    v.

MINAGREX CORPORATION, d/b/a MGX
Stone,

        Defendant.

Case No. 2:19-cv-01697-RSM

**AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND
ORDER**

       The parties hereby stipulate to the following provisions regarding the discovery

of electronically stored information ("ESI") in this matter:

**A.       General Principles**

1.       An attorney's zealous representation of a client is not compromised by conducting

discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate

in facilitating and reasonably limiting discovery requests and responses raises litigation costs and

contributes to the risk of sanctions.

2.       The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in

each case when formulating a discovery plan. To further the application of the proportionality

standard in discovery, requests for production of ESI and related responses should be reasonably

targeted, clear, and as specific as possible.

**B.     ESI Disclosures**

Within 21 days of the entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.      Custodians. The five custodians most likely to have discoverable ESI in their possession, custody or control, if there are five such custodians. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under his/her control.  If less than five custodians are named, a statement for the reasons why shall be given such that the opposing party may determine whether additional custodians should be identified.

2.      Non-custodial Data Sources. A list of non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI.

3.      Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (e.g. third-party email and/or mobile device providers, "cloud" storage, etc.) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.      Inaccessible Data. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). Section (C)(3) below sets forth data sources and ESI which are not required to be preserved by the parties. Those data sources and ESI do not need to be included on this list.

**C.     Preservation of ESI**

The parties acknowledge that they have a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. With respect to preservation of ESI, the parties agree as follows:

1.      Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control.

2.      All parties shall supplement their disclosures in accordance with Rule 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under (C)(3) or (D)(1)-(2) below).

3.      Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a.    Deleted, slack, fragmented, or other data only accessible by forensics.

    b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d.    Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(3)(e)).

    e.    Back-up data that are substantially duplicative of data that are more accessible elsewhere.

    f.    Server, system or network logs.

    g.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

    h.    Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**D.      Privilege**

1.      With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

2.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

3.      Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party or destroyed, and its production shall not constitute

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

a waiver of such protection, if: (i) such information appears on its face to have been inadvertently produced or (ii) the producing party provides notice within 15 days of discovery by the producing party of the inadvertent production. The return or destruction of such information shall not prevent or preclude the receiving party from later moving the Court for an order compelling production of the information on other grounds apart from the inadvertent disclosure, but any such motion shall not disclose the substance (as opposed to the type or nature) of the information, nor shall any such motion include or otherwise disclose, as an attachment or exhibit or otherwise, the information (or any portion thereof) that is the subject of such motion.

4.       Privilege Log Based on Metadata. The parties agree that privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure.

**E.       ESI Discovery Procedures**

1.       <u>On-site inspection of electronic media.</u> Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.       <u>Search methodology.</u> The parties shall timely attempt to reach agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search terms or computer- or technology-aided methodology. In the absence of agreement on appropriate search terms, or an appropriate computer- or technology-aided methodology, the following procedures shall apply:

a.       A producing party shall disclose the search terms or queries, if any, and

ORDER - 4
Case No. 2:19-cv-01697

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

methodology that it proposes to use to locate ESI likely to contain discoverable information. The parties shall meet and confer to attempt to reach an agreement on the producing party's search terms and/or other methodology.

b.      If search terms or queries are used to locate ESI likely to contain discoverable information, a requesting party is entitled to no more than 5 additional terms or queries to be used in connection with further electronic searches absent a showing of good cause or agreement of the parties. The 5 additional terms or queries, if any, must be provided by the requesting party within 30 days of receipt of the producing party's production.

c.      Absent a showing of good cause, each search term or query returning more than 250 megabytes of data is presumed to be overbroad, excluding Microsoft PowerPoint files, image and audio files, and similarly large file types.

d.      The producing party shall search both non-custodial data sources and ESI maintained by the custodians identified above.

3.      <u>Format.</u>

a.      <u>TIFFs</u>: Each electronic document shall be produced in Tagged Image File Format ("TIFF") format, except as provided below. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension. Each document image shall contain a footer with a sequentially ascending production number in the lower right-hand corner and any confidentiality designation in the lower left-hand corner. The footer shall not obscure any part of the underlying image.

Load files shall be provided to indicate the location and unitization of the TIFF files, as detailed below. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. For the avoidance of doubt, families (i.e., a parent document and any attachments) shall be kept together.

b.      <u>Hard-copy documents produced electronically</u>: If either party elects to

produce hard-copy documents in an electronic format, the production of hard-copy documents shall include a load file as provided in Section (E)(3)(e). For the avoidance of doubt, that file shall include the following fields with respect to each hard-copy document produced electronically, to the extent reasonably accessible to the producing party: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) RecordType (should be "Paper Document" or something similar), (7) Author, (8) DocDate, (9) FileFolder, (10) FileName, and (11) PageCount.

Hard-copy documents shall be scanned using Optical Character Recognition ("OCR") technology, unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI).

Paper documents should be logically unitized for production. Therefore, when scanning paper documents for production, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records.

Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file. The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields. The parties will make their best efforts to unitize documents correctly.

Where a document, or a document group—such as a folder, clipped bundle, or binder—has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

c.    Text files: The parties shall produce searchable extracted or captured text in standalone document-level text (.txt) files (i.e., not one text file per page). Emails and other efiles shall be accompanied by extracted text taken from the electronic material itself. Hard-copy documents produced electronically shall be accompanied by an OCR file created from an OCR

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

scan, as provided by Section (E)(3)(b). The extracted or captured text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and the file shall be named with the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension.

        d.    <u>Native documents</u>: Unless otherwise agreed to by the parties, files that are not easily converted to image format—including, but not limited to, presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi)—shall be produced in native format. In addition, a party that receives a document produced in a format specified above in Section (E)(3)(a) may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format.

        If a party produces a document in native format, the producing party shall produce a single-page TIFF slipsheet with the following text: "Document Produced Natively." The slipsheet shall also provide the file name of the natively-produced document and a footer with a sequentially ascending production number in the lower right-hand corner and any confidentiality designation in the lower left-hand corner.

        e.    <u>Load files</u>: The parties shall produce Concordance DAT and OPTICON load files with each electronic production. The load file must reference each document in the corresponding production.

        The parties shall provide the following fields and metadata, if reasonably accessible to the producing party, for each document produced electronically:

| FIELD | DESCRIPTION |
|---|---|
| BegBates | Beginning Bates number assigned to each document |
| EndBates | Ending Bates number assigned to each document |

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

| | |
|---|---|
| BegAtt | Beginning Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| EndAtt | Ending Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| Custodians | The custodian (or multiple custodians for de-duped documents) of a document |
| RecordType | The type of record (e.g., email, attachment) |
| DocType | Document type as identified by metadata associated with the native document indicating the application that created the native document (e.g., Google Docs, MS Word, Gmail, Outlook Email, etc.) |
| EmailSubject | The subject line of a produced email |
| Author | The Author of a document |
| From | The "From" line of a produced email |
| To | The "To" line of a produced email |
| CC | The "CC" line of a produced email |
| BCC | The "BCC" line of a produced email |
| DocDate | Date sent or Date received or Date last modified or Date created (In this hierarchy) |
| ParentDate | DocDate of Parent Record |
| DateSent | The date an email was sent |
| DateReceived | The date an email was received |
| DateLastModified | The date that a document was last modified |
| FileFolder | Fully qualified original path to the source file. Includes path up to and including internal path of containers. |
| FileName | The filename of a produced document |
| FileExtension | The file extension (e.g., .txt or .pdf) of a produced document |
| FileSize | The file size (in bytes) of a produced document |
| MD5Hash | Programmatic unique hash value of a produced document |
| AttachCount | The number of attachments to a document |
| PageCount | The page count of the native document |
| NativePath | The location of the produced native version of a document |
| TextPath | The location of the extracted text/OCR text for a document |

      f.   <u>Color</u>: Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document,

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

then the receiving party may, in good faith, request that the document or ESI item be produced in its original colors, and such a request will not be unreasonably denied by the producing party. The production of documents and/or ESI in color shall be made in TIFF format or in an alternative format, such as single page JPEG format, that provides sufficient quality for the review of these documents and/or ESI. All requirements for productions stated in this Stipulation and Order regarding productions in TIFF format would apply to any productions of documents and/or ESI in color made in such an alternative format.

4. <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, but they shall identify all custodians for each file if reasonably ascertainable. Duplicates shall be identified by industry standard MD5 or SHA-1 hash value only. Only exact duplicates may be de-duplicated.

5. <u>Prior productions.</u> Notwithstanding the foregoing provisions, if in response to a discovery request a producing party proposes to produce documents that have been previously produced in a separate litigation, the parties agree to meet and confer regarding the format of any such production and a protocol for accomplishing the same.

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: December 11, 2019

SUSMAN GODFREY L.L.P.

By: */s/ Alexander W. Aiken*
Rachel S. Black, WSBA No. 32204
Alexander W. Aiken, *Pro Hac Vice*
1201 Third Avenue, Suite 3800
Seattle, WA 98101
Phone: (206) 516-3880
Fax: (206) 516-3883
Email: rblack@susmangodfrey.com
       aaiken@susmangodfrey.com

*Attorneys for Plaintiff*

BYRNES KELLER CROMWELL LLP

By: */s/ Joshua B. Selig (w/permission)*
John A. Tondini, WSBA No. 37413
Joshua B. Selig, WSBA No. 47030
1000 Second Avenue, 38th Floor
Seattle, WA 98103
Phone: (206) 622-2000
Fax: (206) 622-2522
Email: jtondini@byrneskeller.com
       jselig@byrneskeller.com

STOKES LAWRENCE, P.S.

By: */s/ Raymond S. Weber (w/permission)*
Raymond S. Weber, WSBA No. 18207
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 626-6000
Fax: (206) 464-1496
Email: ray.weber@stokeslaw.com

*Attorneys for Defendant*

## ORDER

IT IS SO ORDERED this 13th day of December 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (206) 516-3880; Fax: (206) 516-3883